UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CATHY LANDERS, )<br>)<br>Plaintiff, )<br>)<br>VS. )<br>)<br>UNITED STATES OF AMERICA, THE )<br>INTERNAL REVENUE SERVICE, )<br>CHARLES RETTIG, IN HIS OFFICIAL )<br>CAPACITY AS COMMISSIONER OF )<br>INTERNAL REVENUE, )<br>)<br>Defendants. | CIVIL ACTION NO.<br><br>3:20-CV-00455-G |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant United States of America[1] to dismiss for lack of subject matter jurisdiction. Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") (docket entry 11). For the reasons set forth herein, the motion is granted in part and denied in part.

---

[1] The court notes that the United States is the real party in interest, and therefore on its own motion the court terminates the IRS and Charles Rettig as defendants in this action. See *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985); *Eye v. Internal Revenue Service*, No. 08–60160–CIV, 2008 WL 817071, at *1 (S.D. Fla. Mar. 25, 2008); *Kennedy v. Commissioner*, No. 5:18-cv-00257, 2018 WL 3020161, at *2 (E.D. Pa. June 18, 2018), *aff'd*, 790 Fed. Appx. 447 (3rd Cir. 2019); *First Community Bank of Central Alabama v. Walthall*, No. 2:18-cv-482-ECM, 2019 WL 1509603 at *3-5 (M.D. Alabama Apr. 5, 2019).

I. BACKGROUND

A. Factual Background

This case arises from an Internal Revenue Service ("IRS") action to seize funds held in a bank account owned by the plaintiff, Cathy Landers ("Landers").

On December 5, 2017, Landers and her ex-husband, Wyndal S. Landers, filed a joint federal income tax return for the tax period ending December 31, 2016. Original Complaint ("Complaint") (docket entry 1) at 3. On January 8, 2018, the IRS made an assessment of $742,728 against the Landers jointly and severally for the 2016 tax period. *Id*. The couple divorced on September 14, 2018.[2] *Id.* On December 5, 2019, the IRS, acting through Revenue Officer Vincent Sandles ("Sandles"), issued a Notice of Levy to InTouch Credit Union ("ICU") to seize funds held in a bank account solely owned by Landers. United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion") (docket entry 11) at 1. ICU received the Notice of Levy on December 11, 2019. *Id*. By statute, ICU was required to hold the money for 21 days before turning it over to the IRS. Plaintiff's Opposition to Motion to Dismiss ("Response") (docket entry 14) at 5-6. On December 20, 2019, Landers submitted a request to the IRS to be designated an innocent spouse under 26 U.S.C. § 6015(f). Defendant's Motion at 1. When the 21

---

[2] Landers asserts that as a result of the divorce, Mr. Landers became "solely responsible for all federal income tax liabilities of the parties from their date of marriage through December 31, 2017." Complaint at 3.

day period concluded, ICU turned the funds it held over to the IRS. Complaint at 4.

B. Procedural Background

Landers initiated this action on February 24, 2020. *Id*. Landers asserts three claims for relief against the United States. First, Landers asserts that she is entitled to injunctive relief to have the funds returned for violations of 26 U.S.C. § 6015(e)(1)(B)(i). *Id*. at 1. According to Landers, all actions by the IRS to pursue the levy should have ceased until 90 days after the IRS mailed a notice of its final determination regarding Landers' request for innocent spouse status. *Id*. at 5. Second, Landers asserts that she is entitled to declaratory and/or injunctive relief under 28 U.S.C. § 2201 and 5 U.S.C. § 702 for harm caused by the IRS' allegedly arbitrary, capricious, and unlawful actions. *Id.* at 2. Lastly, Landers seeks mandamus relief under 28 U.S.C. § 1361 ordering the IRS to return the funds *Id*.

The United States filed this motion to dismiss for lack of subject matter jurisdiction on May 22, 2020, citing 26 U.S.C. § 7421(a), commonly referred to as the Tax Anti-Injunction Act ("AIA").[3] Motion. On June 12, 2020, Landers filed an opposition to the United States' motion to dismiss. Response. On June 26, 2020, the United States filed a reply in support of its motion to dismiss. Brief in Reply to Plaintiff's Opposition to Motion to Dismiss ("Reply") (docket entry 15). On August

---

[3] "Tax.–Except as provided in sections 6015(e), 6212(a) and (c), 6213(a), 6232(c), 6330(e)(1), 6331(i), 6672(c), 6694(c), 7426(a) and (b)(1), 7429(b), and 7436, no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a).

17, 2020, Landers filed a sur-reply. Plaintiff's Sur-reply ("Sur-reply") (docket entry 19). The United States' motion to dismiss is therefore fully briefed and ripe for determination.

## II. ANALYSIS

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction: Legal Standard

Federal courts are courts of limited jurisdiction. See *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994); *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). A federal court may exercise jurisdiction over cases only as expressly provided by the Constitution and laws of the United States. See U.S. CONST. art. III §§ 1-2; see also *Kokkonen*, 511 U.S. at 377. Federal law gives the federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A party seeking relief in a federal district court bears the burden of establishing the subject matter jurisdiction of that court. *United States v. Hays*, 515 U.S. 737, 743 (1995); *McNutt v. General Motors Acceptance Corporation of Indiana*, 298 U.S. 178, 189 (1936); *Langley v. Jackson State University*, 14 F.3d 1070, 1073 (5th Cir.), *cert. denied*, 513 U.S. 811 (1994).

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. See FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter

jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgras AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted).

On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992). In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on: "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir.1990) (citing *Williamson*, 645 F.2d at 413). The court's lack of subject matter jurisdiction may be asserted at any time, either in the answer, or in the form of a suggestion to the court prior to final judgment. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d. ed. 2004). A Rule 12(b)(1) motion must be made prior to service of the responsive pleading. *Id*.

An untimely Rule 12(b)(1) motion will be treated as a suggestion that the court lacks jurisdiction. *Id*. Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

### B. Application

#### 1. *Injunctive Relief*

The United States contends that the AIA strips this court of jurisdiction over Landers' claim(s). Motion at 5. The AIA does generally withdraw this court's jurisdiction over claims seeking to enjoin tax collections. See *Enochs v. Williams Packing and Navigation Company, Inc.*, 370 U.S. 1, 5 (1962); *Bob Jones University v. Simon*, 416 U.S. 725, 736-37 (1974). "The Act insures that, *once a tax has been assessed*, the taxpayer ordinarily has no power to prevent the IRS from collecting it; his only recourse is to pay the tax in full, and then sue for a refund." *Jones v. United States*, 889 F.2d 1448, 1449-50 (5th Cir. 1989) (emphasis added). Unless an exception applies, courts must dismiss these suits for lack of subject matter jurisdiction. See *Alexander v. 'Americans United' Inc.*, 416 U.S. 752, 757-58 (1974); see also *Rusu-Carp v. Internal Revenue Service*, No. 2:11-cv-01135 MCE KJN PS, 2011 WL 5554785, at *3 (E.D. Cal. Nov. 15, 2011). Because Landers seeks an injunction ordering the United States to return a collection, there must be an applicable exception to the AIA. See generally *Zimmer v. Connett*, 640 F.2d 208, 209-10 (9th

Cir. 1981) (noting that court proceedings that have the effect of interrupting normal tax procedures likely violate the AIA).

Among the enumerated AIA exceptions is 26 U.S.C. § 6015(e), and Landers has invoked this exception. The second subsection of § 6015(e)(1)(B) states: "Notwithstanding the provisions of section 7421(a), the beginning of such levy or proceeding during the time the prohibition under clause (i) is in force may be enjoined by a proceeding in the proper court[.]" 26 U.S.C. § 6015(e)(1)(B)(ii). The referenced portion of clause (i) states: "no levy or proceeding in court shall be made, begun, or prosecuted against an individual making [an innocent spouse claim] . . . for collection of any assessment to which such election or request relates until the close of the 90th day referred to in subparagraph (A)(ii)[4] . . . ." 26 U.S.C. § 6015(e)(1)(B)(i). The court must therefore resolve two questions: what is the scope of this exception to the AIA, and do the facts of this case fall within that scope? The court concludes they do not.

The parties extensively briefed the meaning of the phrase in subsection (B)(i) "no levy or proceeding in court shall be made, begun, or prosecuted" and whether the IRS "made, began, or prosecuted" a levy in this case. If done without regard for the phrase's subsequent effect on subsection (B)(ii), that was unhelpful to deciding this

---

[4] This 90 day period is the statutory window within which a taxpayer may petition the Tax Court for review of an IRS determination denying innocent spouse protection. *See* 26 U.S.C. § 6015(e)(1)(A)(ii).

motion. The issue is not the nature of the right in subsection (B)(i) or whether the IRS "made" a levy. The issue is whether subsection (B)(ii) now grants this court jurisdiction to enjoin that collection activity. Subsection (B)(ii) allows courts to enjoin "the beginning of such levy . . . ." 26 U.S.C. § 6015(e)(1)(B)(ii). Therefore, the issue is the meaning and scope of the phrase "the beginning of such levy" in subsection (B)(ii) and what effect, if any, subsection (B)(i) has on that meaning.

Neither party cited case law interpreting subsection (B)(ii). There are, however, tools and principles of statutory interpretation and construction available to the court. See generally *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995); *Gulf Fishermens Association v. National Marine Fisheries Service*, 968 F.3d 454 (5th Cir. 2020).

Courts start by looking to the ordinary, everyday meaning of statutory language. See *Lopez v. Gonzales*, 549 U.S. 47, 53-54 (2006); *Food Marketing Institute v. Argus Leader Media*, __ U.S. __, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself."). Dictionaries can inform this inquiry. See *Muscarello v. United States*, 524 U.S. 125, 128 (1998). Webster's International Dictionary defines "beginning" as "the point at which something begins to exist." Webster's Third New International Dictionary 198 (1986). This definition, along with everyday intuition about the phrase "the beginning," suggests

that subsection (B)(ii) allows taxpayers to seek a preemptive injunction against the start of a levy. However, "the beginning" also reads as a limitation[5] and counsels against an indefinite right. It implies that the court's power to issue an injunction under subsection (B)(ii) expires after "the beginning" point.

The United States argues that subsection(B)(ii) gives courts jurisdiction to "prevent[] the IRS from prospectively taking action to collect an assessment such as issuing new levies or beginning or prosecuting court proceedings . . . " only. Motion at 5. Landers disagrees, arguing that "the jurisdictional grant in [subsection (B)(ii)] embraces the prohibition on making, beginning, or prosecuting a levy under [subsection (B)(i)]." Sur-reply at 3. The United States' focus on prospective action aligns more closely with the ordinary meaning of "the beginning." Any slight mismatch in the rights of subsections (i) and (ii) comes from Congress' balancing the policies of the AIA and Section 6015(e).

"[O]ne of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 294 (5th Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Landers posits that reading subsections (B)(i) and (ii) as the United States suggests would render the word "such" in "the beginning of such levy"

---

[5] As opposed to the sentence reading "such levy or proceeding . . . may be enjoined by a proceeding in the proper court."

meaningless.  Sur-reply at 2.  First, it's unclear why this is the case.  "Such" ties subsection (B)(ii) to (B)(i), instead of making subsection (B)(ii) a free-floating rule about IRS levies.  Second, Landers' argument suggests that "levy" in subsection (B)(i) expands the jurisdictional grant in subsection (B)(ii) beyond just the "beginning of" a levy,[6] placing special significance in the word "such."  *Id*.  That reading re-creates the superfluousness problem.  "[T]he beginning of" in subsection (B)(ii) would lose effect.  Landers counters that "[b]y enjoining the making or prosecuting of a levy, one is logically enjoining the beginning."  *Id*. at 3 n.4.  Aside from being inaccurate, this position overlooks that "the beginning" does not logically include whatever else "the making or prosecuting" entails.  The court assumes Congress meant "the beginning" and not something broader that would simply include "the beginning."  See *Northbrook National Insurance Company v. Brewer*, 493 U.S. 6, 13 (1989) ("We cannot doubt that Congress meant what it said."); *Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir. 1990) (en banc).

Landers next argues that her reading properly harmonizes Section 6015(e) with the AIA.  Sur-reply at 3.  Landers notes that the AIA "does not refer to a specific subsection of 6015(e)," and uses this omission as evidence for a broad jurisdictional grant.  *Id*.  This reading ignores the four words that immediately precede listing

---

[6] As stated in the Surreply: "Section 6015(e)(1)(B)(ii) ties itself directly to the 'levy' described in (B)(i)–explicitly by reference, and implicitly by context–thereby recognizing subject-matter jurisdiction *with respect to more than the enjoinment of the mere 'beginning of' a levy*." Surreply at 2 (emphasis added).

Section 6015(e) as an exception: "*Except as provided in . . . .*" 26 U.S.C. § 7421(a) (emphasis added). The exception provided empowers courts to enjoin "*the beginning* of such levy or proceeding." 26 U.S.C. 6015(e)(1)(B)(ii) (emphasis added). Landers' proposed interplay between the AIA and Section 6015(e) would once again read "the beginning" out of the statute.

Lastly, Landers argues that her reading better harmonizes the purposes of the two statutes. Sur-reply at 2-4. According to Landers, the United States' reading would make subsection (B)(ii) a "toothless statutory right" that no taxpayer could properly invoke. *Id*. Courts must read potentially conflicting statutes so that each statute's purposes remain intact. See *OXY USA Inc., v. Babbitt*, 122 F.3d 251, 258 (5th Cir. 1997) (citing *Watt v. Alaska*, 451 U.S. 259, 267 (1981) ("We must read the statutes to give effect to each if we can do so while preserving their sense and purpose.")). The AIA is meant to be a broad prohibition on tax injunctions and should be strictly enforced. See generally *Bob Jones University*, 416 U.S. 725; *Alexander v. 'Americans United,' Inc.*, 416 U.S. 752 (1974). On the other hand, Section 6015(e) was enacted as part of a legislative revamp to the tax code in part to afford greater due process during IRS collection activities. *See* S. Rep. No. 105-174, at *67 (1998). The time line of this case shows how these competing purposes can be reconciled while giving effect to phrases like "the beginning of such levy." The initial assessment was made in January of 2018. Complaint at 3. Landers divorced her

husband in September of 2018.  *Id*.  The notice of levy was not sent to ICU until December of 2019.  *Id*.  That gave Landers more than a year after the divorce to file for innocent spouse relief and seek an injunction under subsection (B)(ii).  Landers had a sufficient window to enjoin a levy. She simply missed it.[7]

Without deciding when exactly the levy began (and the court's power under subsection (B)(ii) expired), the court concludes that Landers was long past that point when she sought injunctive relief, more than a month after the funds had already been turned over to the government by ICU.  Therefore, the court is without subject matter jurisdiction over Landers' claims for injunctive relief, and they must be dismissed.[8]

### 2.  *Mandamus Relief*

For many of the same reasons articulated above, the court does not have subject matter jurisdiction over Landers' mandamus claims.  The court agrees with

---

[7]   Under 26 U.S.C. § 6331(d)(2), which Landers has not alleged the IRS to have violated, the IRS was required to give at least 30 days notice before the levy could be made.  In *Beery v. Commissioner of Internal Revenue*, 122 T.C. 184 (2004), an innocent spouse case, the taxpayer took advantage of this window, and the levy was halted during the pendency of that determination.  *Id*. at 186.

[8]   Throughout the briefing, Landers also turned to the judicially created exception to the AIA found in *Enochs v. Williams Packing & Navigation Company*, 370 U.S. 1 (1962).  To invoke this exception, taxpayers must show 1) that it is clear under no circumstances would the government ultimately prevail and 2) that equity jurisdiction exists, meaning no adequate remedy exists at law. *Enochs*, 370 U.S. at 6-7.  Landers has an adequate remedy in the form of a refund suit should she prevail on her innocent spouse claim, and the costs of pursuing such a claim alone is insufficient to overcome the AIA.  See *Lucia v. United States*, 474 F.2d 565, 577 (5th Cir. 1973) (en banc) ("[H]ardship alone is insufficient to justify injunctive relief against the collection of taxes."). Additionally, the court is unpersuaded that the government cannot prevail, on either the innocent spouse claim or the dispute over Section 6015(e)(1)(B)(i).

the United States that taxpayers cannot use the Mandamus Act to override the AIA by seeking injunctive relief under the guise of a mandamus action. See *Wolcott v. Sebelius*, 635 F.3d 757, 767 (5th Cir. 2011); *Family Rehabilitation, Inc. v. Azar*, 886 F.3d 496, 506 (5th Cir. 2018); *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 506 (4th Cir. 1999) (holding that the Mandamus Act cannot override the AIA). At two points in her complaint, Landers implicitly acknowledges that she is asking for injunctive relief in the guise of mandamus. In paragraph 32, Landers asks the court to "order[] Defendants to comply with their mandatory statutory obligations *and* return the ICU Funds to Ms. Landers." Complaint at 7 (emphasis added). In paragraph 37, Landers asks the court to "[i]ssue an injunction and/or mandamus relief ordering the Defendants to return the ICU funds to Ms. Landers." *Id*. The court cannot ignore the overlapping nature of these requests. Because Landers' claims implicate the AIA and do not fall within an exception to the AIA, her mandamus request must also be dismissed for lack of subject matter jurisdiction.

### 3. *Declaratory Relief*

The United States contends that Landers' interrelated claims under the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), and the Administrative Procedure Act, 5 U.S.C. § 702 ("APA"), are also barred for lack of subject matter jurisdiction. Motion at 8-9. This argument leans heavily on the DJA's exemption from coverage over cases "with respect to Federal taxes" and the APA's subsequent

exception to jurisdiction "to the extent that . . . statutes preclude judicial review." 5 U.S.C. § 701(a)(1).

The phrase "with respect to Federal taxes" in the DJA is coextensive with the AIA's prohibition on injunctions for the purpose of "restraining the assessment or collection of any tax." See *McCabe v. Alexander*, 526 F.2d 963, 965 (5th Cir. 1976); *Wyoming Trucking Association, Inc. v. Bentsen*, 82 F.3d 930, 932-33 (10th Cir. 1996) (citing *Bob Jones University*, 416 U.S. at 733 n.7); *Cohen v. United States*, 650 F.3d 717, 729-31 (D.C. Cir. 2011). The DJA's exemption for federal taxes was meant to leave the "pay first and litigate later" rule with respect to the assessment and collection of taxes undisturbed. See *Flora v. United States*, 362 U.S. 145, 164 (1960). The court must therefore answer the following question: does a suit seeking a declaration about whether the IRS followed proper procedures, *and only such a declaration*,[9] fall outside the scope of the DJA's tax exemption?

The Fifth Circuit has not directly answered this question. However, the D.C. Circuit held that courts do have subject matter jurisdiction over declaratory relief claims seeking review of the procedures followed by the IRS. See *Cohen*, 650 F.3d 717. The court noted that the relief sought was simply a declaration and would have no effect on the assessed and collected taxes, thus leaving the "pay first and litigate

---

[9]  The court emphasizes this point to make clear that any declaration would have no effect on the IRS' ability to assess and collect taxes or any funds already collected. The proper route for a return of any funds collected is still a refund suit.

later" rule intact. See *id*. at 731-32. To the extent that Landers is seeking just a declaration, her case closely mirrors *Cohen*. "[R]egardless of who wins—[it] will not directly affect the disposition of any federal tax. Even if [Landers] win[s], it does not follow that [she is] entitled to a tax refund. Whatever [Landers] ultimately hope[s] to achieve, this is not a refund suit." *Cohen*, 650 F.3d at 728. In other words, the DJA does allow courts to issue declarations regarding procedural issues so long as the declaration does not run afoul of the AIA by interfering with the assessment and collection of taxes. Taxpayers may seek a declaration of their procedural rights, but that declaration cannot be used to bootstrap a right to injunctive relief.

In *McCarty v. United States*, cited by the United States, the Fifth Circuit followed its own precedent[10] and held that Section 702 of the APA, like the DJA, does not override the AIA and therefore taxpayers cannot use it to restrain collections. See *McCarty v. United States*, 929 F.2d 1085, 1088 (5th Cir. 1991) ("[The AIA and DJA] bar the relief sought and therefore § 702 does not provide a basis for jurisdiction over McCarty's challenge to the validity of the assessment."). The Fifth Circuit then approved the lower court's exercising jurisdiction over the declaratory relief claim challenging the procedural validity of the underlying IRS

---

[10] *Smith v. Booth*, 823 F.2d 94 (5th Cir. 1987); *Warren v. United States*, 874 F.2d 280 (5th Cir. 1989).

levy.[11]  See *id*.

Therefore, the court concludes that it does have subject matter jurisdiction over Landers' DJA and APA claims so long as Landers seeks only a declaration of whether the IRS followed proper procedures in levying the ICU Funds.  The court will not have jurisdiction if she seeks a subsequent injunction to have the seized funds returned.

### III.  CONCLUSION

For the reasons stated above, the United States' motion to dismiss for lack of subject matter jurisdiction is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** as to the injunctive and mandamus relief claims, and **DENIED** as to the declaratory relief claim.

**SO ORDERED.**

November 2, 2020.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**

---

[11]  Albeit via 28 U.S.C. § 2410 instead of Section 702 of the APA.  As noted earlier, the Fifth Circuit hasn't answered whether Section 702 grants such jurisdiction, but the D.C. Circuit did in *Cohen*.