UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CATHY LANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:20-CV-00455-G |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is the defendant United States of America ("United States")'s Rule 12(c) motion for judgment on the pleadings. Motion for Judgment on the Pleadings ("Motion") (docket entry 28). For the reasons set forth herein, the motion is denied.

### I. BACKGROUND

A full factual and procedural background is set out in the court's previous memorandum opinion and order issued on November 2, 2020. *See* Memorandum Opinion and Order (docket entry 20). Since then, the United States filed an answer on November 16, 2020 to the plaintiff Cathy Landers ("Landers")'s remaining cause of action. Answer (docket entry 21). The United States subsequently filed the

-1-

instant motion for judgment on the pleadings on January 8, 2021, arguing that Landers' remaining cause of action is prudentially moot. *See generally* Motion. Landers responded on January 29, 2021. Plaintiff Cathy Landers' Response to the United States' Motion for Judgment on the Pleadings ("Response") (docket entry 29). The United States replied on February 12, 2021. Brief in Reply to Plaintiff's Response to Motion for Judgment on the Pleadings ("Reply") (docket entry 30). The United States' motion is therefore fully briefed and ripe for determination.

## II.  ANALYSIS

### A.  Rule 12(c) Motion for Judgment on the Pleadings: Legal Standard

"After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). When ruling on such a motion, the court must regard allegations of fact in the complaint as true. See *Cash v. Commissioner of Internal Revenue*, 580 F.2d 152, 154 (5th Cir. 1978). The court may enter judgment on the pleadings only if the material facts show that the movant is entitled to prevail as a matter of law. See *Greenberg v. General Mills Fun Group, Inc.*, 478 F.2d 254, 256 (5th Cir. 1973). This standard is roughly equivalent to that applied on a motion under Rule 12(b)(6) to dismiss for failure to state a claim. *See* 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (1990); see also *St. Paul Insurance Company of Bellaire, Texas v. AFIA Worldwide Insurance Company*, 937 F.2d 274, 279 (5th Cir. 1991).

B. Application

A district court's discretion to withhold equitable relief in cases not technically moot–or more precisely, not moot in a constitutional sense–is "well established." *See* Wright & Miller, *supra*, § 3533.1 n.33, 34. The doctrine extends to controversies where "it is clear that a judgment for damages could never be collected." *Id*. n.35.50; *MBIA Insurance Corporation v. Federal Deposit Insurance Corporation*, 708 F.3d 234, 245-46 (D.C. Cir. 2013). The two Fifth Circuit cases cited by the United States fall into this latter category. See generally *First Indiana Federal Savings Bank v. Federal Deposit Insurance Corporation*, 964 F.2d 503 (5th Cir. 1992); *Kerr v. Bluebonnet Savings Bank, FSB*, 39 F.3d 320 (5th Cir. 1994). The parties did not cite, and the court did not find, any Fifth Circuit precedent for the former category. The court does not doubt the full doctrine's validity in this circuit, however, given its ubiquitousness across the circuits and the doctrine's traceability to a seminal Supreme Court case, *United States v. W.T. Grant Company*.[1] See *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1125-26 (10th Cir. 2010); See e.g., *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012); *Chamber of Commerce v. United States Department of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980); *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005).

---

[1] 345 U.S. 629 (1953) (drawing a distinction between constitutional and remedial mootness).

Unfortunately, the doctrine of prudential mootness has not been given a clear formula for application. To be clear, broad platitudes have been presented to justify the doctrine and used as a starting point of analysis. See e.g., *Defenders of Wildlife v. Jackson*, 791 F.Supp.2d 96, 114 (D.D.C. 2011) ("Prudential mootness allows the Court to dismiss a case that is not actually moot but is 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the Court to stay its hand, and to withhold relief that it has the power to grant.'" (quoting *Chamber of Commerce*, 627 F.2d at 291)); *First Indiana Federal Savings Bank*, 964 F.2d at 507 ("[T]hose claims should be dismissed for prudential reasons because there is no practical purpose in requiring their adjudication on the merits."); *Wallis v. IndyMac Federal Bank*, 717 F.Supp.2d 1195, 1200 (W.D. Wash. 2010) ("The deciding factor . . . is the inability of the court to provide an effective remedy."). None of these statements alone provide clarity as to when the court should "stay its hand" because "no practical purpose" would be served or when the court is incapable of providing "an effective remedy."[2] There does appear to be a common thread running through the cases, however, summed up in the following quotation: "The core of both Article III and remedial doctrines, in short, is a search

---

[2] Thus, the United States' reliance on these statements and subsequent conclusory argument that "there is no practical purpose in adjudicating Plaintiff's sole remaining claim and no effective remedy is available to her here . . ." is not helpful. *See* Motion at 4.

for the possibility that granting a present determination of the issues offered, and perhaps the entry of more specific orders, *will have some effect in the real world*." Wright & Miller, *supra* (emphasis added).

A survey of the decisions across the circuits suggests a few concrete factors available to the court as anchors for analysis. First, the court can look ahead to see if there is any possibility of actual collection on a judgment. See *MBIA Insurance Corporation*, 708 F.3d at 245-46; see generally *First Indiana Federal Savings Bank*, 964 F.2d at 507. Second, the court asks whether (1) "it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur, and (2) that interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Rio Grande Silvery Minnow*, 601 F.3d at 1134 (10th Cir. 2010) (Henry, J., dissenting).[3] At bottom, the court asks whether money can be collected or behavior could change pursuant to a judgment. In other words, the court is looking to see if a judgment "will have some effect in the real world." Wright & Miller, *supra*.

Landers has put forward two independent purposes that a declaratory judgment in her favor could serve and that, at least for now, would have some effect in the real world. First, there is the possibility that a declaratory judgment could

---

[3] See also *Jordan v. Sosa*, 654 F.3d 1012, 1033-34 (10th Cir. 2011) (detailing reasons for a finding of mootness); *Cheng v. BMW of North America, LLC*, No. CV 12–09262 GAF (SHx), 2013 WL 3940815, at *2-4 (C.D. Cal. July 26, 2013).

buttress a damages action under 26 U.S.C. § 7433.  Second, a declaration that Landers' rights under the Internal Revenue Code were violated could protect against future violations.[4]  The United States' arguments to the contrary are unpersuasive.

The United States' arguments regarding a potential Section 7433 claim miss the point.  The court is well aware that Landers has not pleaded a Section 7433 cause of action here and thus has not pleaded any facts directed at procedural prerequisites for such a claim.  Landers appears to have made a litigation choice to prosecute this claim first before any claims under Section 7433.  The United States has failed to explain why such a choice is fatal to a future Section 7433 claim.  Presumably, Landers could begin the prerequisite administrative exhaustion process at any time either during the pendency of this litigation or after final judgment is rendered.  The United States has not explained to the court why that would be a problem.

Further, the United States misconstrues the purpose of Landers' suit.  As the court understands it, Landers does not intend to use a judgment here as a "substitute prerequisite to a § 7433 claim."  Reply at 3.  Rather, it appears Landers is trying to establish part of what would make up an eventual Section 7433 claim.  Before a court can rule that the IRS "negligently or recklessly" disregarded proper procedure, it has to be established that the IRS, in fact, did not follow proper procedure.  Landers' suit

---

[4] That is assuming, *arguendo*, that Landers' claims are meritorious.  A ruling that the lawsuit can proceed is not a ruling on the merits.

is not an appropriate vehicle for the court to declare anything beyond whether procedures were properly followed.  The scope of Landers' current action is limited accordingly.

Lastly, the United States seems to argue that allowing this suit to go forward because it could support a Section 7433 damages claim would somehow subvert sovereign immunity.  This argument might have some merit if Section 7433 were the only waiver in the United States Code available to test the legality of IRS action.  It is not.  This suit itself arises under the  Administrative Procedure Act, an independent waiver of sovereign immunity that grants courts the power to "hold unlawful" agency action.  *See* 5 U.S.C. § 706.  More accurately, then, Section 7433 is a waiver for *damages* actions, but not the only route to judicial review of administrative action.  Further, a declaration from this court could not frustrate any exhaustion requirements–and thus sovereign immunity–found in Section 7433 because Landers would still have to satisfy those requirements before pursuing that claim.  A declaration here would not alter that requirement.

Turning to Landers' second argument as to why this case is not prudentially moot, the United States again misses the mark.  To be absolutely clear, Landers does not seek from this court via this suit a refund from the government nor a determination of whether she is an "innocent spouse."  Thus, the United States' arguments that Landers is improperly seeking to alter behavior on those topics is

-7-

inapposite. It is worth repeating, verbatim, what Landers is arguing. "Because Plaintiff continues to owe tax to the IRS through her joint and several liability for the 2016 tax year, any change in government behavior would affect Plaintiff, if the IRS were to attempt to levy funds from her bank account in the future." Response at 5. Landers posits that the IRS may try to levy her bank account again in the future, and that a declaration of her rights under the tax code could alter how the IRS goes about making such a levy. The United States did not attempt to contradict this argument, never mind showing that "it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." *Rio Grande Silvery Minnow*, 601 F.3d at 1134 (Henry, J., dissenting). The mootness of this case could change when a decision is made on her underlying innocent spouse claim. Until that point, however, she remains susceptible to more collection activity, and this suit is now aimed at ensuring the IRS follows proper procedures should it decide to pursue another collection. A declaratory judgment is an appropriate means for achieving that result. See *Robinson v. Hunt County, Texas*, 921 F.3d 440, 450 (5th Cir. 2019) (citing *Poe v. Gerstein*, 417 U.S. 281 (1974)).

To that end, the United States' attempt to distinguish *Poe* and *Powell v. McCormack*[5] is unavailing. Yes, this case presents a different context from those cases. That does not alter the legal principles they stand for, however, namely that we

---

[5] 395 U.S. 486 (1969).

presume the government will abide by a court's declaration of rights. See generally *Poe*, 417 U.S. 281. Surely, the United States is not arguing that it can or will ignore a declaration from the court. Thus, *should* this court declare that Landers' rights were in fact violated, the assumption is that the next time the IRS pursues a collection against Landers, it will do so in accordance with that declaration.

### III. CONCLUSION

For the reasons stated above, the United States Rule 12(c) motion for judgment on the pleadings is **DENIED**.

**SO ORDERED**

March 1, 2021

_____
**A. JOE FISH**
**Senior United States District Judge**